Alexander Del Gtorno, J.
This is a motion for an order granting a preference of the trial of this claim. The claimants’ commercial property was appropriated by the State, for which they have filed a claim for $239,500. Title vested in the State on November 29, 1960. Their claim was filed on December 1, 1960. Normally, this claim would be reached for trial in some three years. The claimants assert that they have made application to the Superintendent of the Department of Public Works, pursuant to subdivision 13 of section 30 of the Highway Law for a 60% prepayment of the value of their claim as determined *2 by the said Superintendent. The State denies that this application was made, but the denial is not convincing. The court does accept the claimants’ statement that more than one such application was made for such prepayment, however informal the application was.
Although subdivision 13 of section 30 of the Highway Law states that “ If the amount of a claim cannot be agreed upon, the superintendent of public works may enter into an agreement with the owner or owners providing for payment of an amount equal to sixty per cent of the amount determined by the superintendent to be the value of such claim ” (italics mine) nevertheless these negotiations for payment almost never involve the Superintendent himself. Negotiations usually are made with the Superintendent’s land appraisers assigned to the district who may exercise little or no discretion but must apply such rulings on the subject as are handed down to them. These in turn are required to refer any applications for such payment to those higher in the chain of command. In the meantime, we are now faced with an anxious and doubting claimant and a slow-moving administrative machinery. This often leads to misunderstanding and irritation, and what is even worse, to assertions and denials in the court as to what actually took place or was said, sometimes to the embarrassment of all concerned.
It occurs to me that if the wording of the statute read must. instead of may, the Superintendent would be relieved of red tape and the cumbersome machinery required to untangle it, and would then know just what to do. It may be noted, too, that as the law now stands, the Department of Public Works can determine at will whether or not it will pay anyone the aforesaid 60% and if it does pay, it can select the type of property on which it will pay. The statute makes the department the sole arbiter as to what type of property it will agree to accept the request for the 60% partial payment, as if the other owners had not been equally hurt by the appropriation of their property.
This is neither a wise policy nor one which serves the public weal, as all laws should. The Superintendent or his office are not to blame for the situation, nor are the Attorney-G-eneral or his assistants. The flaw lies in the statute as we have stated. A change should be made. Assuming that for budgetary reasons the statute cannot be made applicable to all claimants who might wish to use its provisions, it should, then, be eliminated altogether, for even the resulting negative equality before the law would make all owners satisfied that, like it or not, they were at least equal before the law.
*3 We must bear in mind that the business of appropriation of property is now a gigantic business. Our court calendar bears groaning witness to this fact. There are on foot today innumerable projects for new highways, thruways, parkways, and for reconstruction of old ones; for State institutions, hospitals, new beaches, playgrounds and vacation resorts, and many others. This wonderful progress in our State has made most of our citizens aware of what appropriation of property means. A great number of our property owners are daily affected thereby, and we cannot afford to treat some favorably and neglect the others. No one is privileged to assert that the owner of a private residence will suffer more because of an appropriation than will one who owns commercial or industrial property. It could well be that the latter may be much more hurt because that property may be his sole or main base of support whereas a private home owner could conceivably be otherwise well off.
Although the State, for a very good reason, can take any man’s property, the question of how much the State’s action may hurt anyone cannot be made a condition of the taking. The State has to move on for the benefit of all its citizens and will ultimately pay a fair price to all owners affected by the appropriation. On that basis citizens accept abrupt eradication from their ancestral home or other property, their hurt being assuaged by the knowledge that at the proper time they will be justly compensated. No one quarrels with that. The complaints are directed to the provisions for partial payment. From the number of complaints brought to the attention of the court it would appear that the discretionary method of prepayment afforded to the Superintendent often amount to pouring salt on the wounds of those who do not qualify under the selective standards set for partial payment.
In spite of views,here expressed regarding subdivision 13 of section 30 of the Highway Law the question at issue is whether or not a preference may be granted. The motion is denied for the simple reason that the claimants have not shown that the income from the property appropriated was their sole income or one upon which they depended very substantially for their maintenance. I sympathize with their age and condition of health, but our steadily growing calendar indicates that there are so many others equally situated, that to grant this motion upon the facts submitted would amount to an acceptance by me of what I have criticized ante. Accordingly, the motion for a preference is denied.